IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **GAIL KNIGHT HUNTINGTON,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 13-2776 |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant. | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Gail Knight Huntington ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Judgment on the Pleadings or Alternative Motion for Remand (ECF No. 12), Defendant's Motion for Summary Judgment (ECF No. 28), and Plaintiff's "Reply Memorandum" docketed as a Response to Defendant's Motion for Summary Judgment (ECF No. 29).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's Alternative Motion for Remand (ECF No. 12) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1963, has a high-school education, and previously worked as a real estate agent, water fitness instructor, security captain, software test engineer, network controller, network operations center engineer, and retail security. R. at 140, 151, 319, 322. Plaintiff applied for DIB on October 16, 2008, alleging disability beginning on May 9, 2008, due to back, neck, and hip injuries. R. at 132, 295-98, 318. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 231-44, 247-48. On September 27, 2011, ALJ Thomas Mercer Ray held a hearing at which Plaintiff, her daughter, and a vocational expert ("VE") testified. R. at 147-87. On December 1, 2011, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of May 9, 2008, through the date of the decision. R. at 129-46. Plaintiff sought review of this decision by the Appeals Council, which granted Plaintiff's request for review (R. at 10-13) and issued a decision on July 22, 2013, finding Plaintiff not disabled through the date of the ALJ's decision (R. at 1-8). The Appeals Council's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On September 20, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.     Opinion Evidence**

On July 27, 2009, a state agency consultant, S. Rudin, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 506-13. Dr. Rudin opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 507. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 508. Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 509-10.

On June 1, 2010, G. Dale Jr., Ed.D., a state agency consultant, evaluated on a psychiatric review technique form ("PRTF") Plaintiff's mental impairment under paragraph B of Listing 12.04 relating to affective disorders. R. at 613-26. Dr. Dale opined that Plaintiff's major depressive disorder caused her to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 616, 623. Dr. Dale did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.04. R. at 624. Dr. Dale thus assessed Plaintiff's mental RFC (R. at 627-30) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or

proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (9) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 627-28. Dr. Dale's RFC assessment thus provided:

> [Plaintiff], amid problems with mood and pain should be able to remember, understand and follow simple instructions given what appears to be adequate cognitive and functional sufficiency as indicated via the [medical evidence of record] [mental status examination], [activities of daily living] and related data. [Plaintiff] appears to have the capacity to maintain sustainability in concentration, persistence and pace at the moderate limitation level in terms of simple tasking and the following of simple instructions. [Plaintiff] has concurrent ability to generally take care of her personal needs, and navigate her social environment when she has to.
>
> Therefore, [activities of daily living] and [medical evidence of record] indicate the presence of a mental impairment. From a psychiatric functional perspective, [Plaintiff] should be able to make adjustments required to perform some type of simple task related functions and activities.

R. at 629.

On June 8, 2010, A.R. Totoonchie, M.D., another state agency consultant, again assessed Plaintiff's physical RFC. R. at 631-38. Dr. Totoonchie opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling in the upper extremities. R. at 632. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 633. Reaching in all directions was limited because of her

inability to move her shoulders. R. at 634. She had no visual, communicative, or environmental limitations, however. R. at 634-35.

B.     **Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's allegations:

> [Plaintiff] testified that she suffers from pain in her hips, back, neck, elbow and shoulder. She had difficulty getting dressed but she could prepare meals and was able to drive her sport utility vehicle. [Plaintiff] reported experiencing a lot of problems and was quick to say someone else has to do things for her. She testified that she was able to take care of herself until she got an aide in February 2010. She also stated that she receives the assistance of her daughter who arrived back in the area in November 2010.

R. at 139; *see* R. at 151-68, 175-76.

C.     **VE Testimony**

The ALJ reviewed the VE's testimony in his decision:

> The [VE] was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and [RFC as assessed by the ALJ and as described below in Part III] as [Plaintiff], and which require skills acquired in [Plaintiff's] past relevant work but no additional skills. The [VE] responded and testified that representative occupations such an individual could perform include: surveillance monitor, located in the national economy there are 150,000 and in the local economy, there are 300; inspector, nationally there are 90,000 and locally there are 450; and machine tender/packer, nationally there are 120,000 and locally there are 500.

R. at 141; *see* R. at 177-85.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below. *See infra* Part VI.

# III

## Summary of Administrative Decisions

**A.     ALJ's Decision**

On December 1, 2011, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of May 9, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy. R. at 134-41. The ALJ thus found that she was not disabled from May 9, 2008, through the date of the decision. R. at 141.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally climb ramps/stairs; never climb ropes/ladders/scaffolds; occasionally balance (refers to normal balancing, not balancing as part of work criteria such as beam balancing); occasionally kneel/crouch/crawl/stoop; avoid concentrated exposure to hazards (such as machinery and heights); moderately limited as to concentration, persistence, and pace; remember, execute, and understand simple instructions; no interaction with general public or co-workers; needs a cane to ambulate (much discussion on record about definition of moderate, it is not as restrictive as occasional, thus equal to frequent).

R. at 134-35.[2]  The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."

R. at 138-39.  The ALJ also gave "great weight" to Dr. Dale's mental RFC assessment.  R. at 140.

B.     **Appeals Council Decision**

After granting Plaintiff's request for review, the Appeals Council issued its unfavorable decision on July 22, 2013.  R. at 1-8.  Specifically, the Appeals Council

> further considered the effects of [Plaintiff's] mental impairment on her functional abilities.  The evidence in the record indicates that [Plaintiff's] mental impairment affects the ability to function with respect to the following: moderate limitations in restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation.  In addition, the Appeals Council finds that the evidence of record supports that [Plaintiff] has [an RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except lift and/or carry including upward pulling up to 10 lbs.; stand/walk with normal breaks for a total of 2 hours in an 8 hour workday; sit with normal breaks for a total of 6 hours in an 8 hour workday; limited in upper extremities as indicated for the ability to lift and/or carry; moderate limitation in [the] ability to reach in all directions; occasionally climb ramps/stairs; never climb ropes/ladders/scaffolds; occasionally balance (refers to normal balancing, not balancing as part of work criteria such as beam balancing); occasionally kneel/crouch/crawl/stoop; avoid concentrated exposure to hazards (such as machinery and heights); remember, execute, and understand simple instructions; no interaction with general public or co-workers; and needs a cane to ambulate.  Moderate is defined as more than a slight limitation but [the] individual [is] still able to function satisfactorily.

R. at 5.  The Appeals Council adopted Dr. Dale's findings contained on his PRTF and gave "significant weight" to Dr. Dale's opinion in his mental RFC assessment, "as it is consistent with a capacity to perform simple tasks."  R. at 5.  The Appeals Council found that Plaintiff's "subjective complaints are not fully credible for the reasons identified in the body of this decision."  R. at 6.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the Commissioner failed to account for many of her mental limitations and failed to provide any evidence that jobs exist for an individual so limited. Pl.'s Mem. Supp. Mot. J. Pleadings 24-29, ECF No. 12-1. Although Dr. Dale's mental RFC assessment was given "great weight" by the ALJ (R. at 140) and "significant weight" by the Appeals Council (R. at 5), Plaintiff maintains that the ALJ's failure to address the "summary

conclusions" of Section I of the form completed by Dr. Dale in assessing her mental RFC (R. at 627-30) warrants remand.

However, "the relevant portion of the [consultants'] opinions is not Section I, which sets forth a series of 'check the box' rankings, but Section III, which provides a detailed narrative functional capacity assessment." *Blum v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-1833, 2013 WL 2902682, at *2 (D. Md. June 11, 2013). "Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations." *Id.* As the Commissioner points out, both the ALJ and the Appeals Council relied on Dr. Dale's opinion in Section III that Plaintiff would be able to remember, understand, and follow simple instructions (R. at 629) in determining that Plaintiff had the RFC to remember, execute, and understand simple instructions (R. at 5, 135). Plaintiff's assertion thus is without merit.

Also to no avail does Plaintiff contend that, in light of her non-exertional limitations, the Commissioner erroneously relied on the Medical-Vocational Guidelines, or the "grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as a framework for decision-making (Pl.'s Mem. Supp. Mot. J. Pleadings 28-29, ECF No. 12-1). *See* Social Security Ruling 83-14, 1983 WL 31254, at *1 ("No table rule applies to direct a conclusion of 'Disabled' or 'Not disabled' where an individual has a nonexertional limitation or restriction imposed by a medically determinable impairment. In these situations, the table rules are used, in conjunction with the definitions and discussions provided in the text of the regulations, as a framework for decisionmaking.").[4]

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to

Plaintiff next maintains that the ALJ failed to recontact Dr. Rosenthal, Dr. Modino, or Ms. Ajiwe, who were treating or consultative medical sources who opined that she was unable to work. Pl.'s Mem. Supp. Mot. J. Pleadings 29-31, ECF No. 12-1; *see* R. at 535, 591, 608-09. She relies on the version of 20 C.F.R. § 404.1512(e) effective between June 13, 2011, and March 25, 2012, and in force at the time of the ALJ's decision on December 1, 2011:

> Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>
> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e) (2011 & 2012).

However, "under the applicable regulations, a claimant's case should be reviewed under the rules in effect at the time of the final administrative decision," *Bryant ex rel. Bryant v. Barnhart*, 63 F. App'x 90, 92 n.1 (4th Cir. 2003), which in this case is July 22, 2013, when the

---

deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

Appeals Council issued its decision. *See* 20 C.F.R. § 404.981; *see also Sims*, 530 U.S. at 106-07, 120 S. Ct. at 2083. On that date, 20 C.F.R. § 404.1512(e) provided:

> Obtaining a consultative examination. We may ask you to attend one or more consultative examinations at our expense. See §§ 404.1517 through 404.1519t for the rules governing the consultative examination process. Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

In any event, even if the regulation in force at the time of the ALJ's decision applied here, Plaintiff points to no "conflict or ambiguity that must be resolved" and does not argue that the opinions in question do "not contain all the necessary information" or do "not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Rather, she contends that, because these opinions were conclusory, the ALJ should have contacted at least one of these sources to obtain a rationale or a more detailed function-by-function assessment. Pl.'s Mem. Supp. Mot. J. Pleadings 30, ECF No. 12-1.

Plaintiff's assertion is without merit. Section 404.1512(e) at the time of the ALJ's decision does not apply to the opinion of Dr. Modino, the consultative examiner, because that regulation "addresses situations where evidence from a claimant's treating physician or medical source needs to be clarified, not information from a consultative examiner hired by the SSA or state agency." *Groseclose v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-13-0200, 2013 WL 5487857, at *2 (D. Md. Sept. 27, 2013). As for Dr. Rosenthal's opinion, the doctor's opinion about Plaintiff's inability to work was not a medical opinion, but an opinion on an issue reserved to the Commissioner and thus not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d). This opinion by Dr. Rosenthal, however, did not render his findings inadequate

for the ALJ to determine whether Plaintiff was disabled. Rather, the ALJ reviewed Dr. Rosenthal's findings (R. at 135, 136) and gave "great weight" to his opinion that Plaintiff's motion was "overall acceptable" (R. at 140, 497), although the Appeals Council later found that Plaintiff was moderately limited in her ability to reach in all directions (R. at 5). In addition, the ALJ gave the opinion of Plaintiff's counselor, Ms. Ajiwe, "some weight" (R. at 139) rather than dismiss it entirely for being vague or not specific, which would trigger an ALJ's duty to recontact. *See James ex rel. D.P. v. Colvin*, Civil Action No. 9:12-2694-RMG, 2014 WL 131198, at *4 (D.S.C. Jan. 14, 2014). In short, under the previous version of § 404.1512(e), "[a]n ALJ is required to recontact medical sources only when the evidence received is *inadequate* to determine whether the claimant is disabled." *Dillon v. Astrue*, Civil Action No. TMD 08-2597TMD, 2011 WL 337334, at *2 (D. Md. Jan. 31, 2011) (citing 20 C.F.R. § 404.1512(e)). "The ALJ was not under a duty to recontact either Dr. [Rosenthal] or [Ms. Ajiwe] simply because they opined [Plaintiff] was unable to work." *Id.* at *3.

Finally, in her "Reply Memorandum of Law in Support of Plaintiff Gail Knight Huntington's Motion for Judgment on the Pleadings," Plaintiff asserts that the Commissioner did not properly assess her mental limitations because neither the ALJ nor the Appeals Council mentioned records from All That's Therapeutic, Inc. (R. at 727-51), that suggested more severe psychological limitations than those opined by Dr. Dale. Pl.'s Reply Supp. Mot. J. Pleadings 5, ECF No. 29.

The Commissioner "must consider all the evidence and explain on the record the reasons for [her] findings, including the reason for rejecting relevant evidence in support of the claim." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reason or for

the wrong reason." *Id.* The Court "cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Id.* (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotation marks omitted). The duty of explanation is satisfied "[i]f a reviewing court can discern 'what the ALJ did and why he did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999).

Here, the Court cannot say that the ALJ's error in failing to discuss and weigh Plaintiff's treatment records from All That's Therapeutic, Inc., was harmless. "[T]he fact that the [ALJ], had [he] considered the entire record, might have reached the same result does not prove that [his] failure to consider the evidence was harmless. Had [he] considered it carefully, [he] might well have reached a different conclusion." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.). As noted above, an ALJ must explain on the record the weight given to all of the relevant evidence and the reason for rejecting such evidence in support of the claim. The Court thus **REMANDS** this case to the Commissioner for further proceedings for her to do so.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 28) is **DENIED**. Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**. Plaintiff's Alternative Motion for Remand (ECF No. 12) is **GRANTED**. A separate order shall issue.

Date: March 27, 2015                                      /s/
                                                          Thomas M. DiGirolamo
                                                          United States Magistrate Judge